```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                         CIVIL ACTION


v.                                               NO. CR 07-35


PETER A. WILLIAMS                                SECTION "F"
```

### ORDER AND REASONS

The United States, the City of New Orleans through the City Attorney's Office as representative of the New Orleans Police Department, and each individual officer whose Public Integrity Bureau file has been subpoenaed by the defendant, move the Court to quash the subpoena <u>duces tecum</u> and to dismiss the request by the defendant to obtain all PIB information files on three NOPD officers pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure.  For the following reasons, the motion is DENIED without prejudice.

### Background

The defendant, Peter A. Williams, has been indicted for being a felon in possession, possessing crack cocaine with the intent to distribute, and possessing a firearm in furtherance of a drug-trafficking crime.  He pled not guilty and his trial is scheduled to begin August 13, 2007.  The Government apparently intends to call the arresting officers to testify.  On July 17, 2007, the defendant subpoenaed "any and all records of complaints and/or

1

public integrity matters regarding" three NOPD officers.[1] The Government now moves to quash the subpoena. The defendant challenges the standing of the Government to bring the motion because it is not the party to whom the subpoena is directed. Alternatively, the defendant argues that, because the records sought are limited to those which pertain to the integrity and credibility of the arresting officers, an in camera inspection of the records by the Court will ensure that the prerequisites of Supreme Court precedent and Rule 17 will be satisfied.

I.

Rule 17(c)(2) of the Federal Rules of Criminal Procedure states: "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." The Supreme Court, after recognizing that the issuance of a subpoena duces tecum in a criminal case under Rule 17(c) is not intended to provide an additional means of discovery, but, rather, to expedite the trial by allowing pretrial inspection of subpoenaed material, has created a four-part test to justify the pretrial production of documents:

> [I]n order to require production prior to trial, the moving party must show:  (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of

---

[1] Two of the officers were the arresting officers in this case.  The third is an officer who has arrested the defendant in the past for an incident which has been, in the opinion of the defendant, the subject of possible interest to the Government as either a superseding indictment or as "other crimes" evidence.

> due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. 683, 700 (1974); see also United States v. Arditti, 955 F.2d 331, 345 (5th Cir. 1992)(finding that a subpoena can be authorized only if the defendant can show that the evidence sought is relevant, admissible, and has been requested with sufficient specificity).

II.

Little is revealed by the Fifth Circuit regarding the specific question of whether the Government can challenge a subpoena duces tecum that has been issued to a non-party. Generally, "[a] party only has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)(citing In re Grand Jury, 619 F.2d 1022, 1027 (3d. Cir. 1980)); see also Ponsford v. United States, 771 F.2d 1305 (9th Cir. 1985)(finding no standing to quash absent a proprietary interest in documents sought).

A. Does the Government enjoy standing to move to quash the subpoena?

The Government claims that it has standing to move to quash the subpoena duces tecum because the documents are protected by the

law enforcement privilege.  The Government relies on United States
v. Orena, 883 F. Supp. 849, 868-869 (E.D.N.Y. 1995).  In Orena, the
court applied the law enforcement privilege to justify limiting the
enforcement of subpoenas to exclude information that "would reveal
the names or addresses of law enforcement officers, identify
undercover surveillance vehicles, or disclose law enforcement
techniques and procedures."  Id. at 868.  This case, however, is
not analogous to Orena because there is no confidential information
regarding the identities of the officers or their law enforcement
techniques at risk.  The only information "at risk" deals with the
job performance of the officers in question, potentially speaking
to their credibility as witnesses.

    The Government's second theory is that it has standing to move
to quash the subpoena because it has a legitimate interest in
"preventing undue lengthening of the trial, undue harassment of its
witness, and prejudicial over-emphasis on [the witness's]
credibility."  United States v. Giampa, 1992 WL 296440 (S.D.N.Y.
Oct. 7, 1992)(quoting United States v. Raineri, 670 F.2d 702, 712
(7th Cir. 1982)).  The Giampa case involved the prosecution of
organized crime and subpoenas were issued to individuals
participating in the Witness Protection Program; indeed, the
Government had a heightened interest in shielding witnesses from
potential undue harassment and danger.  Giampa, 1992 WL 296440, at
*1.  The Raineri case involved the prosecution of a prostitution
enterprise and included charges of threatening a witness.  In that
case, an out-of-state witness traveled to testify for the

4

prosecution, and a month later, the defense subpoenaed the witness to reappear as a defense witness. The court found that the Government had a legitimate interest in preventing undue lengthening of the trial and harassment of the witness. Raineri, 670 F.2d at 712. In stark contrast, the facts in this case are not at all analogous Giampa or Raineri and this subpoena compromises none of the interests in those cases. The Government has not demonstrated that the subpoena, arguably returnable before trial, will delay the trial. See Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951); United States v. Daniels, 95 F. Supp. 2d 1160, 1164 (D. Kan. 2000); United States v. Tomison, 969 F. Supp. 587, 596 (E.D. Ca. 1997). The Government has also not demonstrated or implied that the subpoena will result in the undue harassment of the officers.

Absent contrary direction by the Fifth Circuit on this issue, this Court declines to find that the Government has asserted a legitimate interest that would grant standing to move to quash the subpoena. Further, this Court finds that the Government has not shown that the subpoenas are unreasonable or oppressive, as applied to the Government, as is required by Rule 17(c)(2).

B. Does the Government have standing to move to quash the subpoena because it is acting on behalf of the subpoena's recipients?

The Government's pleading, and its reliance on United States v. Orena, 883 F. Supp. 849 (E.D.N.Y. 1995), implies that it has

5

standing to intervene on behalf of non-parties that have been issued subpoenas. The Government attempts to apply the same legitimate-interest theory. In <u>Orena</u>, a case about organized crime and a conspiracy to commit murder, the defense issued a subpoena to the long-time accountant of a member of one crime faction, who was scheduled to testify for the Government. <u>Id.</u> at 869. The defense wanted subpoenaed tax documents to impeach the Government's witness and the court found that the effect of the subpoena would unduly lengthen the trial and harass the Government's witness. <u>Id.</u> Again, the Government in this case does not suggest that the return of the subpoena would lengthen the trial by any amount, nor does it suggest that the officers would be harassed or endangered in any way if their personnel records are reviewed for impeachment purposes.

Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure outlines the method for a non-party who objects to fulfilling the obligations of the subpoena.[2] A review of case law on this subject reveals that courts have routinely found that the Government does not have the ability to stand in another's shoes and move to quash a subpoena. <u>See, e.g., United States v. Nachamie</u>, 91 F. Supp. 2d. 552, 560 (S.D.N.Y. 2000)(finding Government had no standing to move to quash subpoenas for doctors reluctant to reveal their status as

---

[2] Rule 45(c)(2)(B) directs the recipient of the subpoena to send a letter of objection to the party serving the subpoena within fourteen days after service. The party serving the subpoena may then move the Court to compel the return of the subpoena. Neither the City, the police officers, or the defendant have acted as Rule 45 instructs.

Government witnesses); <u>Daniels</u>, 95 F. Supp. at 1164.  "[T]he Government cannot undertake to act as counsel to its witnesses." <u>Nachamie</u>, 91 F. Supp. 2d. at 560.

## III.

Finally, the Government argues that, even if it has no standing to move to quash the subpoena, "the court is required to examine the subpoenas for compliance with the test set forth in <u>Nixon</u>."  <u>United States v. Modi</u>, 2002 WL 188327, at *2 (W.D. Va. Feb. 6, 2002).  Indeed, "[t]he burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad."  <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 221 (1951).  "The government's standing to object has no effect on the court's obligations under Rule 17."  <u>Modi</u>, 2002 WL 188327, at *2 (citing <u>United States v. Beckford</u>, 964 F. Supp. 1010, 1025 (E.D. Va. 1997)).

In accordance with the cases cited by the Government and the request of the defendant, this Court will conduct an <u>in camera</u> evaluation of the documents that are the object of the subpoena to assess them for relevancy and admissibility against the <u>Nixon</u> test. <u>See United States v. Dent</u>, 149 F.3d 180, 191 (3d. Cir. 1998)(affirming district court's decision denying motion to subpoena witness's personnel files upon an <u>in camera</u> review of files); <u>United States v. Brown</u>, 479 F. Supp. 1247, 1251 (D. Md. 1979)(denying defense counsel's request to review psychiatric

records after conducting an <u>in camera</u> review).³

Accordingly, IT IS ORDERED: that the government's motion to quash the subpoena <u>duces tecum</u> is DENIED without prejudice.  An <u>in camera</u> review of the personnel files will take place in chambers on Friday, August 10, at 1:30 p.m.

New Orleans, Louisiana, August 8, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

³   The Government's implication that this material may be controlled by the rules of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150, and the Jencks Act, 18 U.S.C. § 3500, is incorrect.  "The Jencks Act and <u>Brady</u> and its progeny govern the production by the Government of prosecution witness' pre-trial statements and favorable evidence to the defense which are <u>in the possession of the Government</u>."  <u>United States v. Beckford</u>, 964 F. Supp. 1010, 1013 (E.D. Va. 1997)(emphasis in original).  The "Government," as the prosecutor of this case, does not include the City of New Orleans, which is the custodian of the police officers' personnel files.  But if the United States is the actual possessor of the personnel files at this time, this Court is confident that it will comply with the Federal Rules of Evidence and constitutional criminal procedure in exchanging evidence with the defendant.